IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAEANNE WILLAUER, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RILEY SALES, INC. | : | |
|     Defendant. | : | No. 08-5258 |

<u>MEMORANDUM</u>

**Schiller, J.**                                                                                                                              September 16, 2009

      Plaintiff RaeAnne Willauer brings this action against her former employer, Riley Sales, Inc., alleging that her employment with Defendant was terminated in violation of federal and state law. Presently before this Court is Defendant's motion for summary judgment on all counts asserted in Plaintiff's Amended Complaint and on several issues related to damages. For the reasons that follow, the Court grants the motion in part and denies it in part.

**I.    BACKGROUND**

      Plaintiff began working for Defendant in August of 2001. (Pl.'s Resp. to Def.'s Statement Undisputed Facts, [*hereinafter* "Pl.'s Facts"] ¶ 4). In 2003, Plaintiff held the position of accounting coordinator and reported to Deborah Ott, Riley Sales' Controller. (Pl.'s Facts ¶¶ 6–7.)

      In June 2007, Riley Sales advertised a job opening for the position of accounting coordinator. (Pl.'s Facts ¶ 15.) On July 6, 2007, Plaintiff went to see the president of Riley Sales, Michael Riley, and inquired whether Riley Sales had placed the advertisement in order to find her replacement. (Pl.'s Facts ¶¶ 23–24.) Mr. Riley responded that Riley Sales was "making changes." (Pl.'s Facts

¶ 25.) Plaintiff contends that, in addition, Mr. Riley told her that "[Ott] said that you were looking for another job so we thought maybe we should hire somebody just in case—to cover ourselves." (Pl.'s Resp. to Mot. for Summ J. Ex. A [*hereinafter*, "Pl. Dep."] at 421.)

Upon hearing that the company was "making changes," Plaintiff told Mr. Riley that she felt that she had been the victim of sexual harassment based her supervisor Ott's behavior. (Pl.'s Facts ¶¶ 27–28.) Plaintiff claimed that Ott often complimented Plaintiff on her shirts and stared at her breasts in a way that made Plaintiff uncomfortable. (Pl.'s Facts ¶ 28.b.) Plaintiff contended that on one occasion Ott watched her change into a bathing suit when Plaintiff and her children were over at Ott's home to go swimming following a company barbeque in August of 2006. (Pl.'s facts ¶ 28.c.) In addition, Plaintiff once found a piece of paper in Ott's office on which Plaintiff's name was written repeatedly, in a way that suggested to Plaintiff that Ott was infatuated with her. (Pl.'s facts ¶ 28.a.)

According to Plaintiff, Mr. Riley told her that he was leaving on a trip out of the country and that they would talk upon his return. (Pl.'s facts ¶ 29.) On July 16, 2007, after Mr. Riley returned from his trip, Plaintiff was fired. (Pl.'s facts ¶ 30.)

Plaintiff's claims of sexual harassment also focus on an incident that occurred in March or April of 2007. Willauer was discussing with a colleague an upcoming vendor show at Dave & Buster's restaurant in Philadelphia, PA in which Willauer and Ott would be working together. Plaintiff claims that after commenting to her colleague that the work for the vendor show would continue into the late evening, Ott said "RaeAnne, since it's going to be such a late night, we can get a room down the road and stay there." (Pl.'s facts ¶ 32.c.) To this, Plaintiff replied, "no, I don't think so." (*Id.*)

Plaintiff filed this lawsuit on November 5, 2008. Her Amended Complaint raises four causes of action: a claim of sexual harassment under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 42 PA. CONS. STAT. ANN. § 951–63 (claiming both that Defendant is responsible for a hostile work environment created by Ott and that her firing constitutes *quid pro quo* harassment), and a claim of retaliation in violation of Title VII and the PHRA.[1]

Defendant filed a motion for summary judgment on all counts on August 14, 2009.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). When the moving party does not bear the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable jury to find for her at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

---

[1] According to the Third Circuit "[t]he proper analysis under Title VII and the [PHRA] is identical as Pennsylvania courts have construed the two acts interchangeably." *Weston v. Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir. 2001). Therefore, the Court will examine the federal and state law claims jointly.

Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### III. DISCUSSION

#### A. Retaliation claims

Because a genuine dispute over a material fact exists, summary judgment on Plaintiff's retaliation claims must be denied. Plaintiff alleges that she was fired because she engaged in activity protected by Title VII—specifically, that she complained to a supervisor about perceived sexual harassment. Defendant asserts that it was already preparing to terminate Plaintiff before she raised her concerns about discrimination with Mr. Riley, a contention which Plaintiff challenges.

To establish a *prima facie* case of retaliation, "a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). If the plaintiff establishes this *prima facie* case of retaliation, the burden shifting framework of *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) applies and the defendant must then assert a legitimate, non-discriminatory reason for the adverse employment decision. *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). If the defendant satisfies this burden, a plaintiff must then produce some evidence from which a jury could reasonably find that the employer's proffered explanation for taking the action was false, and that retaliation was the real reason for the adverse employment action. *Id.*

As to the first element of the *prima facie* case of retaliation, the parties agree that Plaintiff complained of alleged sexual harassment to a supervisor.[2] (Pl.'s facts ¶ 27.) This is activity protected by Title VII. *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701–02 (3d Cir. 1995) ("[W]e do not require a formal letter of complaint to an employer or the EEOC as the only acceptable indicia of the requisite 'protected conduct' ...." (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990))); *Moore*, 461 F.3d at 343 ("'Opposition' to discrimination can take the form of 'informal protests of discriminatory employment practices, including making complaints to management.'" (quoting *Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006))).

Furthermore, Defendant's decision to terminate Plaintiff's employment eleven days after she complained to Mr. Riley regarding Ms. Ott's alleged harassing behavior qualifies as an adverse employment action "after or contemporaneous with" Willauer's protected activity. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 768 (1998) (noting that firing is an adverse employment action); *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 289 (3d Cir. 2001) (holding that termination "clearly fulfills the second prong of the prima facie case for a retaliation claim").

The key question with respect to the *prima facie* retaliation case is whether Plaintiff has submitted evidence of a causal link between her complaints of sexual harassment and the decision to terminate her employment sufficient to survive a motion for summary judgment. While it is true

---

[2] Defendant alleges that Plaintiff logged her first complaint about the alleged sexual harassment on July 6, 2007, in a meeting with Michael Riley, president of Riley Sales. (Def.'s Statement of Undisputed Facts ¶ 27). Plaintiff contends that she made complaints earlier than that to John Raffa, then the General Manager of Riley Sales. (Pl. dep. 105:10–13). Regardless of when the first complaint was made, both parties acknowledge that Willauer did make such a complaint shortly before her employment was terminated.

that "the record must be evaluated as a whole" in determining whether the causation element is met, *Cardenas v. Massey*, 269 F.3d 251, 260–61 (3d Cir. 2001), Third Circuit case law suggests several factors that a district court can look to in making this determination, including (1) the temporal proximity between the employee's protected activity and the adverse employment action, and (2) discrepancies in the proffered reasons for the adverse employment action. *Abramson*, 260 F.3d at 288.

To prove a causal nexus, Plaintiff points out that she was fired on July 17, 2007, eleven calendar days and seven business days after she complained about sexual harassment to Mr. Riley. While this close temporal connection is evidence of a causal nexus between the protected activity and the adverse employment action, it is not conclusive on its own. The Third Circuit has cautioned that a showing of temporal proximity by itself will generally not be enough for a plaintiff to survive summary judgment unless the timing is "unusually suggestive" of discrimination. *Krouse v. Am. Sterlization Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

Plaintiff also points to evidence of Defendant's inconsistent rationales for the termination. *See Waddell v. Small Tube Products, Inc.*, 799 F.2d 69, 73 (3d Cir. 1986) ("The district court noted the inconsistency in Small Tube's explanations of its refusal to rehire and could appropriately have taken that into account."). During discovery, Plaintiff's supervisors alternately claimed that Plaintiff's employment was terminated because of poor performance and because the position was being eliminated (Pl.'s Resp. to Mot. for Summ J. Ex. D [Ott Dep.] at 77, 81). This inconsistency, coupled with the close temporal proximity between Plaintiff's protected activity and the termination of her employment are legally sufficient to demonstrate a causal nexus in a retaliation claim. This Court therefore finds that Plaintiff has made out a *prima facie* case of retaliation.

A *prima facie* case of retaliation having been presented, the burden of production then shifts to Defendant to present a nondiscriminatory reason for terminating Plaintiff's employment. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). This burden is met here, as Defendant has presented evidence that it was planning to terminate Plaintiff's employment before she complained to Mr. Riley, either because of her performance or because her position was being eliminated. (*See* Pl.'s Resp. to Mot. for Summ J. Ex. J at 43–44; Ott Dep. at 78; Def.'s Mot. for Summ. J. Ex. 3A.; *Id.* Ex. 3B.)

Nevertheless, Plaintiff's retaliation claims survive summary judgment. Since Defendant met its burden of production, that burden shifted back to Plaintiff, this time to come forward with evidence that "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Krouse*, 126 F.3d at 501. Based on the inconsistent reasons Defendant articulated for the termination decision and the temporal proximity of that decision to Plaintiff's complaints of sexual harassment, a reasonable jury could find that Defendant's proffered explanation is pretextual and that Plaintiff is the victim of unlawful retaliation. *See Farrell*, 206 F.3d at 286 ("As our cases have recognized, almost in passing, evidence supporting the prima facie case is often helpful in the pretext stage and nothing about the *McDonnell Douglas* formula requires us to ration the evidence between one stage or the other."). Therefore, Defendant's motion for summary judgment with respect to Plaintiff's retaliation claims is denied.

**B. Sexual Harassment claims**

"A plaintiff who claims that she has been sexually harassed has a cause of action under Title VII if the sexual harassment was either a *quid pro quo* arrangement, or if the harassing was so pervasive that it had the effect of creating an intimidating, hostile, or offensive work environment."

*Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66 (1986).  Here, Plaintiff alleges both hostile work environment and *quid pro quo* sexual harassment claims.

### 1. Hostile work environment

To establish a hostile work environment claim under Title VII or the PHRA, a plaintiff must demonstrate that: (1) the employee suffered intentional discrimination because of [her] sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.[3] *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990).  A hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor,* 477 U.S. at 65, 67) (internal quotation marks omitted).  In determining the existence of a hostile work environment, a court must examine the "totality of the circumstances," rather than assessing each piece of evidence in isolation.  *Andrews*, 895 F.2d at 1486.  The Third Circuit has articulated several factors for courts to examine, including:  (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.  *See Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001) (citing *Harris*, 510 U.S. at 23).  However, "[w]hat constitutes harassment defies

---

[3] Although the *Andrews* court used the language "pervasive and regular," the Supreme Court subsequently articulated the standard for hostile work environment claims as being "severe or pervasive."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  Subsequently, it has been recognized that "severe or pervasive" is the proper standard.  *Jensen v. Potter*, 435 F.3d 444, 449 n.3 (3d Cir. 2006).

reduction to a simple formula." *Keown v. Richfood Holdings*, Civ. A. No. 01-2156, 2002 WL 1340311, at *5 (E.D. Pa. June 19, 2002). Ultimately, the Court must apply "[c]ommon sense, and an appropriate sensitivity to social context" in judging these matters. *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 82 (1998).

Defendant argues that Plaintiff's hostile work environment claims fail as a matter of law because the conduct underlying the claims was insufficiently severe or pervasive to satisfy the second prong of the *Andrews* test. The Court agrees.

Plaintiff's complaints about her supervisor's conduct boil down to four allegations: (1) that Ott complimented Plaintiff on her shirts and stared at Plaintiff's breasts between 10 and 15 times over the course of a year, (2) that Plaintiff found a piece of paper in Ott's office on which Ott had scribbled Plaintiff's name numerous times all over the page, (3) that in response to Plaintiff's comment that she and Ott would be working late together at a trade show, Ott suggested that they might get a hotel room together the evening of the show, and (4) that Ott watched Plaintiff change into a bathing suit while Plaintiff was visiting Ott's home.[4]

The conduct that Plaintiff alleges is not pervasive. Plaintiff's charges are mostly of isolated incidents. The only conduct that occurred with any frequency—the staring—was not severe. Plaintiff described this staring in her deposition: "I mean, when you walked into a room, she would comment, that is a beautiful shirt on you, RaeAnne. And then she would look at my chest." (Pl. Dep. at 52.) Plaintiff does not allege that Ott made any comments to her about her breasts or attempted

---

[4] Defendant argues that it is not responsible for this conduct because it occurred outside of work at Ms. Ott's home (albeit after a company barbeque). (Def. Br. Supp. Summ. J. 17 n.6.) The Court need not address this because even if the incident at Ms. Ott's home were conduct chargeable against Defendant, Plaintiff's hostile work environment claim would still be insufficient as a matter of law.

to touch her in any way. (Pl. Dep. at 56.) While such conduct is not a prerequisite for a showing of a hostile work environment, the Court considers their absence when judging the severity of Ott's alleged conduct. Nor was the remainder of Ott's alleged conduct especially severe. The piece of paper with Plaintiff's name scribbled on it that Plaintiff allegedly discovered in Ott's office is innocuous. The suggestion that Ott and Plaintiff share a hotel room after a late night of work at a trade show, even if interpreted to be a sexual proposition, was not forceful nor repeated once Plaintiff declined. And nothing in the record suggests that Ott's conduct was physically threatening or humiliating, or that it unreasonably interfered with Plaintiff's work performance.

Even when viewing these undisputed facts in the light most favorable to the Plaintiff and drawing all reasonable inferences therefrom, no reasonable jury could find that this amounts to a hostile work environment. The sporadic incidents that Plaintiff alleges, when viewed together, do not suggest a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21. At most, they suggest an individual who is attracted to another individual and made modest overtures to that fact. Such conduct is not sexual harassment merely because it occurs in, around or after work and is undesired. Title VII "does not set forth 'a general civility code for the American workplace.'" *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Conduct far more severe than that alleged here has been found by this and other courts to be found insufficient as a matter of law to prove a hostile work environment. For example, in *Keown*, the plaintiff charged his supervisor with leaving him eleven sexually suggestive pamphlets in a four month period, including one regarding erectile dysfunction accompanied by a note signed

in the name of plaintiff's wife. 2002 WL 1340311, at *1. This Court held that such conduct "[did] not approach the level of severe, pervasive, and regular sexual harassment needed to support a sexual harassment claim." *Id.* at *5. More explicit and clearly objectionable behavior has also been held by other courts insufficient to support a claim of sexual harassment at the summary judgment stage. *See, e.g.*, *Mitchell v. Pope*, Civ. A. No. 05-14927, 2006 WL 1976011, at *2 n.3 (11th Cir. July 14, 2006) (finding no actionable harassment under Title VII where supervisor tried to kiss plaintiff and called her a "frigid bitch" when she refused, lifted her over his head, rubbed up against her, and told her that "your ass sure does look fine" and "you can just walk into the room and I'd get an erection"); *Koelsch v. Beltone Elecs. Corp.,* 46 F.3d 705, 708 (7th Cir.1995) (finding no actionable harassment under Title VII where supervisor touched female employee's leg and buttocks, twice asked her out on dates and told her that he could not control himself in her presence); *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir.1993) (affirming summary judgment against employee whose male supervisor placed "I love you" signs in her work area, asked her out on several occasions, and twice attempted to kiss her at work); *Arasteh v. MBNA Am. Bank, N.A.*, 146 F. Supp. 2d 476, 495 (D. Del. 2001) (rubbing of plaintiff's legs, complimenting plaintiff's clothes, and staring at her chest an unspecified number of times too commonplace, vague and infrequent to be considered severe or pervasive).

Plaintiff cites to *E.E.O.C. v. Smokin' Joe's Tobacco Shop, Inc.*, Civ. No. 06-1758, 2007 WL 1258132 (E.D. Pa., Apr. 27, 2007) and *Seybert v. The International Group, Inc.*, Civ. A. No. 07-3333, 2009 WL 722291 (E.D. Pa., Mar. 19, 2009) to support the position that "conduct involving staring at an employee's breasts in combination with other sexually humiliating behavior constitutes severe and pervasive harassment." (Pl. Sur-Reply Br. at 2.) Plaintiff reads these cases too broadly.

11

They do not stand for a simple "ogling-plus" test, as Plaintiff suggests. Instead, the court in both of those cases made its decision based on "the totality of the circumstances." *Smokin' Joes*, 2007 WL 1258132, at *6; *Seybert*, 2009 WL 722291, at *20. Those circumstances are distinguishable from the present matter. The *Seybert* court pointed to a "pattern of discriminatory behavior spanning several months, in which Mr. Marchand apparently singled [plaintiff] out for inappropriate sexual exchanges, insults, harsh rebukes, humiliation, and an unfair performance review." In *Smokin' Joes*, the plaintiff's supervisor not only stared at plaintiff's breasts, but also, *inter alia*, crept up behind her to smell her neck, told her that he would eat her if she was a piece of fruit, and made comments about her to co-workers that she looks like she would "suck dick" and "put a hurtin' on you in the bedroom." *Smokin' Joes*, 2007 WL 1258132, at *6.

This Court, of course, does not suggest that staring at a woman's breasts is acceptable conduct, whether in the workplace or elsewhere. Nor is this Court saying that staring at a female employee's breasts cannot, as a matter of law, serve as the basis for a hostile work environment claim, whether accompanied by other sexual conduct or by itself. *See Billings v. Town of Grafton*, 515 F.3d 39 (1st Cir. 2009) (profiling supervisor's lengthy and repeated history of staring at employee's breasts in reversing ruling for summary judgment in favor of employer on hostile work environment claim). This case is just an example of the First Circuit's recognition that "not every [hostile work environment] claim premised on staring or leering in the workplace automatically presents a question for the jury." *Id.* at 50. Based on the totality of the circumstances, Plaintiff has failed to set forth a hostile work environment claim.

### 2. Quid pro quo harassment

To establish a *quid pro quo* harassment claim, a plaintiff must demonstrate either that she

submitted to the sexual advances of her alleged harasser or suffered a tangible employment action as a result of her refusal to submit to those sexual advances. *Hurley v. Atlantic City Police Dep't.,* 174 F.3d 95, 133 (3d Cir. 1999); *see also Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1296 (3d Cir. 1997) ("[U]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.").

Therefore, in order for a claim of *quid pro quo* harassment to lie, there must be an "unwelcome sexual advance[], request for sexual favor[], [or] conduct of a sexual nature," *id.*, to which the employee is expected to acquiesce or face reprimand from her employer. Plaintiff suggests that she was subject to two kinds of sexual advances: Ott's "staring at [Plaintiff's] breasts and making comments about her shirts" and her offer to get a hotel room for herself and Plaintiff the night of a trade show in which they would be working together late. (Pl.'s Br. in Opp'n. to Summ. J. at 32.) This conduct is insufficient to withstand summary judgment.

Plaintiff contends that the hotel incident occurred sometime in March or April of 2007 (Pl. Dep. 84: 4–6) and that Plaintiff's employment was terminated July 16, 2007 (Pl.'s Br. in Opp'n. to Summ. J. at 32). Plaintiff's contention that she "understood this request to be sexual in nature" (*id.*) is speculative when viewed within its context: Plaintiff had complained that the trade show at which she and Ott would be working could run very late and that she might not get home until as late as 2 A.M. (Pl. Dep. at 78.) Ott stated that she and Plaintiff could get a hotel room together the evening of the trade show, and Plaintiff said no. (Pl. Dep. at 80.) The incident did not come up again and

three or four months passed between this incident and the termination of Plaintiff's employment. (Pl. Dep. at 84.)  A statement made three months before an employee is fired that the employee and her supervisor can get a hotel room together following a late evening of work off-site, which statement was made after the employee bemoaned how late they would be working, cannot support a finding of *quid pro quo* harassment.

Nor does the allegation that Ott stared at Plaintiff's breasts somewhere between 10 and 15 times in the year before Plaintiff was fired change the outcome.  This Court recognizes that *quid pro quo* harassment can be premised not only on sexual advances and propositions, but also on "other verbal or physical conduct of a sexual nature" where "rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual," *Robinson,* 120 F.3d at 1296. However, there is no evidence in the record that submission to Ott's stares was a "condition of [Plaintiff's] employment," or that "submission to or rejection of such conduct by an individual [was] used as the basis for employment decisions affecting such individual." *Id.*  No reasonable jury could find that Plaintiff's failure to jump into Ott's arms in response to Ott's alleged ogling was the reason Plaintiff's employment was terminated.

### C.  Pain and Suffering

Defendant moves for summary judgment on the issue of Plaintiff's emotional damages, contending that "she has provided no expert opinion supporting a contention that any pain and suffering she experienced resulted from any alleged sexual harassment or retaliation." (Def.'s Br. in Supp. of Summ. J. at 20.)  The Third Circuit has found that even statements from co-workers and family are sufficient evidence to support an award for pain and suffering.  *See Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 573 (3d Cir. 2002) (affirming trial court's decision to deny

14

motion for remittitur of pain and suffering award). Plaintiff in this case indicates that she plans to offer at trial the testimony of Dr. M. Penny Levin, Plaintiff's therapist, to testify that Plaintiff experienced "grief and sadness" as a result of her firing. (Pl.'s Sur-Reply Br. at 5.) Therefore, Defendant is wrong in arguing that Plaintiff cannot as a matter of law recover damages for pain and suffering.

### D. Lost Wages

Defendant also asks this Court to hold as a matter of law that Plaintiff is not entitled to lost wages because she failed to mitigate her damages by not looking for "substantially equivalent employment," upon losing her job. *See Booker v. Taylor Milk Co.*, 64 F.3d 860, 866 (3d Cir. 1995). "Although the statutory duty to mitigate damages is placed on the Title VII plaintiff, the employer has the burden of proving failure to mitigate." *Id.* at 864. While Defendant claims that "Plaintiff withdrew entirely from the full-time workforce and did not seek substantially equivalent employment until January 2008," (Pl.'s Br. in Supp. of Summ. J. at 22), Plaintiff claims that she started looking for work right away (Pl. Dep. at 290). Since a factual issue exists as to the extent of Plaintiff's job search efforts, the Court denies summary judgment on this issue.

### E. Out of Pocket Medical Expenses

Finally, Defendant asks this Court to rule as a matter of law that Plaintiff's out of pocket medical expenses do not exceed $1324.40. Plaintiff claims that she had to purchase a health insurance policy after her employment with Defendant was terminated. (Pl. Dep. at 304.) During discovery, she presented a letter from Independence Blue Cross ("IBC") noting that its records showed Charles Willauer, Plaintiff's husband, had a policy with IBC from October 1, 2007 through May 31, 2008 at a cost of $567.61 per month, totaling $4540.88 for the entire period. This is

presumably the basis for Plaintiff's claim for "in excess of $4,000 in out-of-pocket medical expenses." (Pl.'s Supplemental Resp. to Def.'s First Set of Interrogs. at 3.) Defendant arrives at its figure by subtracting from the $567.61 monthly premium the $236.51 that it claims Plaintiff was paying per month for her health insurance while employed with Defendant, then multiplying that sum by four, which a portion of Plaintiff's deposition suggests is the number of months she paid for the IBC coverage. (*See* Pl. Dep. at 304 ("I picked up health insurance, we paid it on our own in – I don't know exactly, September or October of '07, until I got this job at Zoom in February.")). It is unclear from the record how long Plaintiff paid out of pocket for health insurance. Therefore, the Court will deny summary judgment on this issue.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment with respect to the Plaintiff's claims for hostile work environment and *quid pro quo* sexual harassment under Title VII and the PHRA, and denies the remainder of Defendant's motion. An appropriate order will be docketed separately.